UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WALTER G. FIGUEROA,                                    **DECISION AND ORDER**

                    Petitioner,

            v.                                                 1:22-CV-00293 EAW

STATE OF NEW YORK, COUNTY OF
MONROE,

                    Respondent.

_____

## I.      INTRODUCTION

Walter G. Figueroa ("Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. 1).[1]  Petitioner challenges the constitutionality of the judgment entered against him on July 19, 2016, in New York State, Monroe County Court (Randall, J.), following his guilty plea to attempted second-degree criminal possession of a controlled substance ("CPCS") (New York Penal Law ("P.L.") §§ 110.00, 220.18).  (*Id.* at 1).[2]  For the reasons below, the request for a writ of habeas corpus is denied, the petition is dismissed, and a certificate of appealability is denied.

---

[1]     Petitioner was incarcerated at the Orleans Correctional Facility, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), on the date he filed the petition.  (Dkt. 1 at 1).  On August 25, 2022, Petitioner was released to parole supervision.  *See* https://nysdoccslookup.doccs.ny.gov/ (search results for DIN 16B2160) (last accessed Mar. 11, 2025).

[2]     Page citations to pleadings filed by Petitioner are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.  Page citations to pleadings filed by Respondent are to the original pagination.

## II.    BACKGROUND

### A. Petitioner's Arrest and Indictment

On June 20, 2015, following a wiretap investigation (*see* Dkt. 19-2 (eavesdropping warrants); SR: 334[3]), members of law enforcement arrested Yemar Marcano ("Marcano") as he was driving to Petitioner's residence at 1199 North Street in the City of Rochester. Officers recovered approximately two kilograms of cocaine from Marcano.  (SR: 91). Search warrants were issued for the building at 1199 North Street, including a basement storage area; and Petitioner's vehicle, a 2006 gray Acura RL.  (SR: 63-64, 96-97, 99-109). On June 20, 2015, at about 6:55 p.m., members of law enforcement executed the search warrant and found additional cocaine and drug paraphernalia in the storage area at 1199 North Street.  (SR: 63, 91-92, 334-36, 338-40).  Petitioner was not at 1199 North Street during the search, but he was arrested later that evening during a traffic stop.  (SR: 63-64, 96-97).

A Monroe County grand jury returned a joint indictment charging Petitioner and Marcano with multiple drug-related charges.  (SR: 35-38).  In particular, Petitioner was charged with attempted first-degree CPCS (P.L. §§ 110.00, 220.21); attempted third-degree CPCS (P.L. §§ 110.00, 220.16(1)); two counts of third-degree CPCS (P.L. § 220.16(l), (12)); and three counts of third-degree criminally using drug paraphernalia (P.L. §§ 220.50(1), (2), (3)).  (SR: 35-38).

---

[3]    Citations to "SR:" refer to the Bates-stamped page numbers of the state court records.  (Dkt. 19-4, Dkt. 19-5).

### B. Pre-Plea Motions

Petitioner's retained attorney, Teodoro X. Siguenza, Esq. ("Siguenza"), filed motions on September 14, 2015, seeking, among other things, to suppress the physical evidence. (SR: 49-50). Monroe County Court Judge Douglas A. Randall ("trial court") held oral argument on the suppression motions on November 19, 2015. The trial court denied Petitioner's motion for a hearing to challenge the stop and arrest of his co-defendant, Marcano. (11/19/15 T: 11).[4] The matter was adjourned as to Petitioner's remaining claims. (11/19/15 T: 12-15).

Petitioner subsequently retained new counsel, James Riotto, II, Esq. ("Riotto" or "defense counsel"), who was substituted for Siguenza on February 2, 2016. (2/02/16 T: 2).

At the next court appearance on February 23, 2016, the prosecutor offered a plea agreement to Petitioner. The terms required Petitioner to plead guilty to the top count of the indictment (attempted first-degree CPCS), waive his appellate rights, and admit to a prior felony conviction at sentencing. (2/23/16 T: 3-4). In exchange, Petitioner would receive a 12-year determinate sentence of imprisonment to be followed by 5 years' post-release supervision. (*Id.*). The matter was adjourned so that Riotto could review discovery and discuss the terms of the plea with Petitioner. (2/23/16 T: 5).

On May 12, 2016, Riotto requested a bill of particulars and made a supplemental omnibus motion (SR: 69-85) that included requests for suppression of evidence (SR: 76-

---

[4]    Citations in the format "month/day/year T:" refer to the original pagination of the transcripts from Petitioner's criminal proceeding. (Dkt. 19-3).

82).  To establish his standing to challenge the searches and seizures at the North Street apartment, Petitioner submitted an affidavit admitting that he lived there.  (SR: 85). Petitioner also argued that the eavesdropping evidence was inadmissible because the applications were not supported by probable cause and did not demonstrate that eavesdropping was necessary, as required by C.P.L § 700.15(2) and (4).[5]  (SR: 77-78). Petitioner further asserted that the prosecution had not timely disclosed the applications for pen registers as required by C.P.L. § 700.70.[6]  (SR: 77, 83).

At an appearance on May 31, 2016, the prosecutor reiterated the terms of the plea offer and stated that, after speaking with Riotto, she understood that Petitioner was not interested in pleading guilty.  (5/31/16 T: 3-4).  The trial court then denied the supplemental suppression motion as untimely under the applicable statutory deadlines.  (5/31/16 T: 5). The trial court indicated that, based on its previous review, the search warrants were based on probable cause.  (*Id.*).  Accordingly, the trial court found that "[t]here doesn't appear to be any basis to suppress any evidence with respect to them."  (*Id.*).  In particular, the search

---

[5]     In New York State, an eavesdropping warrant "may issue only . . . [u]pon probable cause to believe that a particularly described person is committing, has committed, or is about to commit a particular designated offense."  N.Y. Crim. Proc. Law ("C.P.L.") § 700.15(2).  C.P.L. § 700.15(4) further provides that "an eavesdropping warrant cannot issue unless the police show that 'normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried, or to be too dangerous to employ.'"  *People v. Baris*, 116 A.D.2d 174, 186-87 (4th Dep't 1986) (citation omitted).

[6]     If the prosecution seeks to introduce into evidence the contents of any communications intercepted by eavesdropping, it must, within 15 days of the defendant's arraignment, provide the defendant with a copy of an eavesdropping warrant and accompanying application.  C.P.L. § 700.70.

warrant for 1199 North Street "describe[d] the apartments and any curtilage," which the trial court "read[] to include storage areas available to it." (*Id.*). Trial was scheduled to begin on June 20, 2016. (5/31/16 T: 5-6).

### C. Guilty Plea and Sentencing

On June 10, 2016, the prosecutor indicated that Petitioner was going to accept a revised plea offer. In particular, the proposed count of conviction was reduced from attempted first-degree CPCS to attempted second-degree CPCS; and the sentence promise was modified from 12 years' imprisonment plus 5 years' post-release supervision to a range of 9 to 12 years' imprisonment plus 5 years' post-release supervision. (6/10/16 T: 2). The revised offer included the previous conditions that Petitioner waive his appellate rights and admit to a prior felony conviction. (*Id.*).

In response to the trial court's questions, Petitioner stated that he had a chance to speak with Riotto, that he had enough time to discuss the plea offer with Riotto, and that he wished to plead guilty. (6/10/16 T: 3). Petitioner confirmed that he could read, write, speak, and understand English; that he was not under the influence of alcohol, drugs, or other medications that affected his ability to understand the proceedings; and that he was satisfied with his attorney's representation of him in the case. (6/10/16 T: 4).

The trial court advised Petitioner that he was not required to plead guilty and had the right to a trial but, by pleading guilty, he was giving up that right. (6/10/16 T: 4-5). Petitioner stated that that he understood. (*Id.*). The trial court explained that by pleading guilty, Petitioner was giving up his rights to have Riotto call witnesses on his behalf, to have Riotto cross-examine the prosecution's witnesses, to testify or not testify at trial, and,

if he declined to testify, to have the jury instructed that it could not hold that decision against him.  (6/10/16 T: 5).  Petitioner confirmed that he understood.

Petitioner stated that nobody had promised him anything in exchange for his guilty plea; nor had anyone threatened him or forced him to relinquish his trial rights.  (*Id.*).

Petitioner and Riotto executed a written waiver of appellate rights.  (6/10/16 T: 9-10; SR: 110).  Petitioner admitted that he lived at 1199 North Street and that he knew Marcano was going to deliver more than 8 ounces of cocaine on June 20, 2015, to that address.  (6/10/16 T: 11-12).  The plan was for Marcano to bring the cocaine into 1199 North Street but Marcano was stopped by the police before he could do so.  (6/10/16 T: 12-13).  Petitioner knew it was illegal to possess cocaine.  (6:10/16 T: 13).  He also knew that by Marcano bringing the cocaine to him, he was "going to have access and authority to do things with it."  (*Id.*).  Petitioner pleaded guilty to attempted second-degree CPCS. (6/10/16 T: 13-14).

The trial court then asked whether Petitioner had answered all of its questions truthfully, to which Petitioner responded, "Yes."  (6/10/16 T: 14).  The trial court concluded by stating, "I'll accept your plea, find you made a voluntary, knowing and intelligent waiver of your rights to trial.  You made out the elements of the reduced charge." (*Id.*).

At sentencing, the trial court adjudicated Petitioner a second felony drug offender pursuant to P.L. § 70.70(3) and sentenced him to 10 years' imprisonment plus 5 years' post-release supervision.  (7/19/16 T: 7-9).

### D. Direct Appeal

Petitioner's assigned appellate counsel filed a brief arguing that Riotto was ineffective for failing to file supplemental suppression motions on the extended schedule allegedly authorized by the trial court and for filing the supporting affidavit in which Petitioner admitted to living at the location where the drugs and paraphernalia was seized. (SR: 9-19). Petitioner filed a *pro se* supplemental appellate brief arguing that: (1) the trial court improperly denied his motion to suppress eavesdropping evidence because the wiretap application failed to establish that eavesdropping was necessary as required under C.P.L. § 700.15(4); (2) the search of 1199 North Street exceeded the warrant's scope; (3) the warrant was not supported by probable cause because no narcotics transactions occurred at his residence; (4) the warrant application falsely stated that Petitioner kept a sub-machine gun at his residence; (5) the investigators did not obtain an order, supported by probable cause, that authorized tracking of a particular phone that was the subject of an eavesdropping order; (6) the investigators failed to follow statutorily-mandated protocols for sealing recordings intercepted through an eavesdropping order; (7) the trial court improperly participated in plea negotiations and coerced Petitioner into pleading guilty; (8) his plea was not knowing and voluntary because the trial court did not advise him of the constitutional rights forfeited by pleading guilty; and (9) the plea allocution negated his guilt because he did not admit to knowing that a person was bringing narcotics to his residence. (SR: 183-204). Appellate counsel filed a reply to the prosecution's brief. (SR: 221-28).

The Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division") unanimously affirmed the judgment of conviction on March 26, 2021. *People v. Figueroa*, 192 A.D.3d 1655 (4th Dep't 2021). The Appellate Division determined as an initial matter that Petitioner's waiver of his appellate rights was not enforceable because "both the signed written waiver of the right to appeal and the oral waiver colloquy mischaracterized the nature of the right to appeal. . . ." *Id.* at 1656 (citing *People v. Thomas*, 34 N.Y.3d 545, 565-66 (2019)).

The Appellate Division rejected the ineffectiveness claim based on Riotto's failure to file a supplemental suppression motion within an extended time period granted by the trial court because "the record does not support defendant's contention that the [trial] court granted counsel an extension of time within which to file a motion to suppress as part of a supplemental omnibus motion." *Id.* The Appellate Division also rejected the ineffectiveness claim based on Riotto's submission of an affidavit from Petitioner conceding that he lived at the residence where the drugs underlying his conviction were found. *Id.* The Appellate Division stated that to the extent it survived the guilty plea, Petitioner "failed on this record to demonstrate any prejudice from that alleged error." *Id.*

The Appellate Division held that by failing to move to withdraw the plea or vacate the judgment, Petitioner failed to preserve the contention that his guilty plea was not knowing, voluntary, and intelligent. *Id.* The Appellate Division declined to review the contention as a matter of discretion in the interest of justice. *Id.*

Finally, the Appellate Division concluded that "none [of the remaining contentions in Petitioner's *pro se* supplemental brief] warrants modification or reversal of the judgment." *Id.*

Petitioner sought leave to appeal to the New York Court of Appeals with regard to the two ineffectiveness claims raised in the counseled appellate brief. (SR: 357). On May 28, 2021, the New York Court of Appeals denied leave to appeal. *People v. Figueroa*, 37 N.Y.3d 955 (2021).

### E.  C.P.L. § 440.10 Motion to Vacate the Judgment

Petitioner filed a *pro se* C.P.L. § 440.10 motion (SR: 379-93) to vacate the judgment on April 10, 2021, arguing that his plea was not knowing, intelligent, and voluntary because the trial court mischaracterized the scope of the appellate rights waiver and failed to advise him adequately of the rights he was giving up as part of the plea. According to Petitioner, he was entitled to withdraw his guilty plea because the Appellate Division found, on direct appeal, that his appellate rights waiver was invalid.

The trial court denied the C.P.L. § 440.10 motion without a hearing on October 19, 2021. (SR: 394-97). The trial court noted that the Appellate Division had declined to review Petitioner's unpreserved challenge to the voluntariness of his guilty plea. (SR: 395). The trial court reasoned that "[a]s this issue was raised and determined on appeal, the law requires denial of a motion to vacate judgment." (*Id.*). With regard to Petitioner's claim that the plea was unenforceable based on the Appellate Division's invalidation of the appellate rights waiver, the trial court held that:

[w]hether or not the plea is enforceable is a matter of record. There are sufficient facts readily apparent on the record to determine on appeal whether the defendant's plea is enforceable. The law requires denial of a motion to vacate judgment where the allegations are of a nature that would be readily apparent upon the record and the defendant's remedy is to raise the issue on an appeal.

(SR: 395-96 (citing C.P.L. § 440.10(2)(c)).

Finally, the trial court rejected as "without merit" the argument that the Appellate Division's invalidation of the appellate rights waiver required that Petitioner be allowed to withdraw his plea pursuant to C.P.L. § 440.10. (SR: 396). The trial court noted that the Appellate Division could have exercised its discretion to review Petitioner's challenge to the voluntariness of his plea but instead opted not to do so. (*Id.*). The trial court found that this decision did "not now confer power" on the trial court "to consider matters of record pursuant to a motion to vacate the judgment." (*Id.*).

The Appellate Division denied Petitioner's application for leave to appeal on April 15, 2022. (SR: 469-70). Petitioner then attempted to appeal to the New York Court of Appeals, which dismissed the application on July 21, 2022, because the Appellate Division's order was not appealable as a matter of law. (SR: 590 (citing C.P.L. § 450.90(1)).

### F. Section 2254 Petition

In his timely petition, Petitioner reasserts the arguments raised in his *pro se* supplemental appellate brief and C.P.L. § 440.10 motion challenging the voluntariness of his guilty plea (Points One and Seven) and the lawfulness of the search warrants, the search of 1199 North Street, and the eavesdropping warrants (Points Two, Three, Four, Five, and

Six).  He also raises a new argument that the prosecution failed to comply with the sealing requirements for intercepted communications set forth in 18 U.S.C. § 2518(8)(a).

Respondent filed a response (Dkt. 19), memorandum of law (Dkt. 19-1), the state court records (Dkt. 19-4, Dkt. 19-5), and state court transcripts (Dkt. 19-3).  Petitioner filed a reply.  (Dkt. 26).

The case was reassigned to the undersigned on March 5, 2025.  The dispositive referral order was vacated on March 6, 2025.  (Dkt. 29).

## III.  <u>JURISDICTION</u>

### A.  "In Custody" Requirement

A federal court's jurisdiction to consider a petition for a writ of habeas corpus is limited to petitions filed on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The fact that a petitioner's sentence expires while the petition is pending does not affect subject matter jurisdiction so long as the petitioner was "'in custody' when the application for habeas corpus [was] filed."  *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  As noted above, at the time he filed the petition, Petitioner was incarcerated and serving the sentence imposed on the judgment of conviction he attacks in the petition.  Therefore, he meets § 2254(a)'s "in custody" requirement.

### B.  Mootness

Article III, Section 2 of the United States Constitution limits the subject matter of the federal courts to cases that present a "case or controversy."  *Spencer v. Kemna*, 523

U.S. 1, 7 (2002).  "[T]o satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury, which is likely to be redressed by a favorable judicial decision."  *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999).  "Unlike the 'in custody' requirement, mootness is not fixed at the time of filing but must be considered at every stage of the habeas proceeding."  *Nowakowski v. New York*, 835 F.3d 210, 217-18 (2d Cir. 2016).

"A criminal case does not necessarily become moot when the convict finishes serving the sentence."  *Mercurris*, 192 F.3d at 293.  As long as "there exists 'some concrete and continuing injury' or 'collateral consequence' resulting from the conviction," *id.* (quoting *Spencer*, 523 U.S. at 7), "the case will remain a live case or controversy," *id.*  The Supreme Court has held that collateral consequences are presumed to flow from a felony conviction.  *Sibron v. New York*, 392 U.S. 40, 55-56 (1968).

Petitioner challenges the validity of his conviction for attempted second-degree CPCS, which is a class A-II felony.  *See* C.P.L. § 110.05(2) (stating that an attempt to commit a crime is a class A-II felony when the crime attempted is a class A-II felony); *id.* § 220.18 (second-degree CPCS is a class A-II felony).  Therefore, collateral consequences are presumed to exist, regardless of Petitioner's detention status.  *See*, *e.g.*, *Burch v. Millas*, 663 F. Supp. 2d 151, 157 (W.D.N.Y. 2009) (where the petitioner challenged the underlying felony conviction that led to his detention, the presumption of collateral consequences existed, notwithstanding the petitioner's completion of his sentence (citing *Spencer*, 523 U.S. at 7-8)).  Therefore, the petition presents a live case or controversy.

## IV.    EXHAUSTION AND PROCEDURAL DEFAULT

"Before a federal court may grant habeas relief to a prisoner in state custody, the prisoner must exhaust his or her state court remedies." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(3), (c)).  However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'"  *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. §2254(b)."  *Id.* (citing 28 U.S.C. § 2254(c)).  Of course, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim."  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

A procedural default also can result when the petitioner raises a federal claim in state court and the state court disposes of it on an "adequate and independent state ground." *See Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) ("Under the independent and adequate state ground doctrine, a federal court sitting in habeas 'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgment.'" (emphases in original (quoting *Coleman*, 501 U.S. at 729))).

"For a procedurally defaulted claim to [be heard on the merits], the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim

will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)).

Respondent argues that the claim concerning the prosecutor's alleged failure to comply with the sealing requirements in 18 U.S.C. § 2518(8)(a) is unexhausted but must be deemed exhausted and procedurally defaulted. (Dkt. 19-1 at 35-36). Respondent also contends that Petitioner's challenges to the constitutionality of his guilty plea are procedurally barred because the state courts rejected them based on adequate and independent state grounds. (*Id.* at 18-21).

"[I]n habeas corpus cases, potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit." *Quinney v. Conway*, 784 F. Supp. 2d 247, 260 (W.D.N.Y. 2011) (alteration in original) (quoting *Boddie v. New York State Div. of Parole*, 288 F. Supp. 2d 431, 439 (S.D.N.Y. 2003); citing *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997)). As Respondent argues, the potentially procedurally defaulted claims are uniformly meritless. In the present case, judicial efficiency favors bypassing the procedural hurdles to habeas review and resolving Petitioner's claims on the merits.

## V.    **STANDARD OF REVIEW**

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011) ("*Richter*"). Under § 2254(d), a federal court "shall not . . . grant[ ]" an application

for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence." *Id.* § 2254(e)(1).

However, "when it is unclear whether AEDPA deference applies," courts may "deny writs of habeas corpus under § 2254 by engaging in *de novo* review because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("*Thompkins*"). In resolving Petitioner's petition, the Court follows the *Thompkins* analytical approach and reviewed the claims under a *de novo* standard.

## VI.   <u>DISCUSSION</u>

### A.   Claims Related to the Search Warrants and Eavesdropping Warrants (Points Two, Three, Four, Five, and Six)

Petitioner asserts various challenges to the warrants issued in his case and the evidence seized pursuant to those warrants. He claims that the search warrants for 1199 North Street were not supported by probable cause (Point Two), the search of 1199 North Street exceeded the scope of the warrants (Point Three), the police lacked probable cause to conduct GPS tracking on the user of a particular telephone (Point Four), the prosecution

- 15 -

did not provide copies of the eavesdropping warrants within the statutory time-frame (Point Five), and the communications intercepted pursuant to the eavesdropping warrants were not properly sealed and recorded in compliance with state and federal law (Point Six).

### 1.  Fourth Amendment Violations (Points Two, Three, and Four)

In Points Two and Four, Petitioner contends that the search warrants and eavesdropping warrants were not supported by probable cause; in Point Three, Petitioner asserts that the search exceeded the scope of the warrant.  "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures' and prohibits the issuance of warrants without 'probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'"  *United States v. Jones*, 43 F.4th 94, 108 (2d Cir. 2022) (alteration in original (quoting U.S. Const. amend. IV)).  "The general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant."  *United States v. Ramirez*, 523 U.S. 65, 71 (1998).  Thus, Points Two, Three, and Four assert violations of the Fourth Amendment's reasonableness requirement.  As Respondent argues, these claims are barred from habeas review by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976), because Petitioner had a full and fair opportunity to litigate the alleged Fourth Amendment violations in New York State court.

"In *Stone*, the Supreme Court held that 'where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence

obtained in an unconstitutional search or seizure was introduced at his trial.'" *Navarro v. McCarthy*, No. 6:20-CV-06094 EAW, 2023 WL 8375858, at *6 (W.D.N.Y. Dec. 4, 2023) (quoting *Stone*, 428 U.S. at 481-82 (emphasis in original)), *appeal dismissed*, No. 24-426, 2024 WL 3897517 (2d Cir. July 8, 2024). "Notably, all that must be shown is that the State has provided an opportunity to litigate the petitioner's Fourth Amendment claim; it matters not whether the petitioner actually 'took advantage of the State's procedure.'" *Griffin v. Duncan*, 439 F. Supp. 2d 258, 260 (W.D.N.Y. 2006) (quoting *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002)).

"A petitioner may be able to avoid *Stone*'s bar in one of two situations—the state provided 'no corrective procedures at all' for review of alleged Fourth Amendment violations, or the petitioner was 'precluded from using' the corrective procedures 'because of an unconscionable breakdown in the underlying process.'" *Navarro*, 2023 WL 8375858, at *6 (quoting *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992)). "A petitioner receives a 'full and fair opportunity' to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism" for suppression of evidence tainted by an unlawful search and seizure.'" *Ferron v. Goord*, 255 F. Supp. 2d 127, 131 (W.D.N.Y. 2003) (quoting *McPhail v. Warden, Attica Corr. Fac.*, 707 F.2d 67, 69 (2d Cir. 1983)). An "unconscionable breakdown" sufficient to allow federal habeas review of a Fourth Amendment claim would necessarily "call[ ] into serious question whether a conviction is obtained pursuant to those fundamental notions of due process at the heart of civilized society." *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y.), *aff'd*, 852 F.2d 59 (2d Cir. 1988) (per curiam). Neither scenario is present here.

- 17 -

Petitioner utilized the review process available under New York State law, which the "federal courts have approved . . . as being facially adequate." *Capellan*, 975 F.2d at 70 n.1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989)). In particular, defense counsel filed suppression motions and, when they were unsuccessful, Petitioner elected to plead guilty. On direct appeal, Petitioner raised suppression arguments in his *pro se* supplemental appellate brief, but they were rejected.

In his reply (Dkt. 26), Petitioner asserts in conclusory fashion that Respondent's application of *Stone* is "misplaced." (*Id.* at 9). However, he fails to explain why this is so. Nor does he attempt to show that he did not have a "full and fair opportunity" to litigate his Fourth Amendment claims or that there was an "unconscionable breakdown" in New York State's corrective process. "As the Second Circuit explicitly has held, 'a mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.'" *Navarro*, 2023 WL 8375858, at *6 (quoting *Capellan*, 975 F.2d at 72). Petitioner therefore cannot overcome the preclusive effect of *Stone*, and the Fourth Amendment claims in Points Two, Three, and Four are barred from habeas review.

## 2. State Statutory Violations (Point Five)

Petitioner asserts that the prosecution did not comply with the 15-day deadline in C.P.L. § 700.70 for disclosure of the eavesdropping warrants. Petitioner also claims that the eavesdropping warrants did not comply with C.P.L. § 700.15(4) because the prosecution failed to establish that all normal investigative procedures had been tried without success. (Dkt. 1 at 69). Further, he contends that the prosecution did not comply

with the New York State law requirements for recording and sealing intercepted communications (*id.* at 12), as set forth in C.P.L. §§ 700.50(2) and 700.35(3).

"A necessary predicate for the granting of federal habeas relief . . . is a determination by the federal court that their custody violates the Constitution, laws, or treaties of the *United States*." *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (emphasis supplied). It is "not the province of a federal habeas court to re-examine . . . questions [of State law]." *Id.* at 22. Petitioner's claims based on alleged violations of C.P.L. §§ 700.15(4), 700.35(3), 700.50(2) and 700.70 must be denied because "[i]ssues involving compliance with state procedural laws do not raise federal questions necessary for habeas review." *Gjelaj v. Ercole*, No. 09 CIV. 3126 KMW PED, 2012 WL 4450983, at *14 (S.D.N.Y. Feb. 9, 2012) (dismissing, as not cognizable, habeas claims based on violations of C.P.L. §§ 700.35(3), 700.50(2), and 700.70), *adopted*, No. 09 CV 3126 KMW PED, 2012 WL 4435299 (S.D.N.Y. Sept. 26, 2012); *see also Kirby v. Senkowski*, 141 F. Supp. 2d 383, 398 n.8 (S.D.N.Y. 2001) (claim involving New York State's wiretap statute "constitutes a state law-claim that cannot be raised in a habeas petition").

### 3. Federal Statutory Violation (Point Six)

Petitioner asserts that the prosecution did not follow the sealing procedure in 18 U.S.C. § 2518(8)(a), which requires that "[i]mmediately upon the expiration of the period of the [eavesdropping] order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." "[W]hen the sealing is not done immediately, the government must provide a satisfactory explanation for the delay, even if a seal is present at the time the tape is sought to be introduced." *United States v.*

*Massino*, 784 F.2d 153, 156 (2d Cir. 1986). "Any delay beyond two days triggers the satisfactory explanation requirement." *Id.*

In Petitioner's case, the orders pertaining to the eavesdropping investigation were issued by New York State court judges applying New York State law. The New York statute governing the sealing of intercepted communications is C.P.L. § 700.50(2), which the Second Circuit has described as the New York State "counterpart" to 18 U.S.C. § 2518(8)(a). *United States v. Sotomayor*, 592 F.2d 1219, 1223 (2d Cir. 1979). The only distinction is that C.P.L. § 700.50(2) "requires sealing at the expiration of each order authorizing eavesdropping, regardless of any extension of the period of authorized eavesdropping." *Id.* & n.8 (citations omitted).

The Second Circuit has not decided whether alleged violations of the federal wiretapping statute, Title III of 18 U.S.C. § 2515 *et seq.*, "constitute an independent basis for federal habeas relief, distinct from Fourth Amendment claims subject to the limitations of *Stone v. Powell*." *Gjelaj*, 2012 WL 4450983, at *15 (citing *Cruz v. Alexander*, 669 F.2d 872, 874 n.2, 875-76 & n.4 (2d Cir. 1982) (assuming that Title III claims are subject to habeas review because the district court reached the merits of the claim, but stating that the court "express[ed] no view" as to the district court's preliminary holding that *Stone* is inapplicable to Title III claims), *decision clarified*, 708 F.2d 31, 34 (2d Cir. 1983); *Lasso-Reina v. Haponick*, No. 05 civ. 8817 (SHS), 2009 WL 3334843, at *16 n.14 (S.D.N.Y. Oct. 14, 2009) (collecting cases)); *see Rivera v. Kaplan*, No. 17-CV-2257 (RA) (SN), 2022 WL 3572880, at *5 n.6 (S.D.N.Y. Aug. 19, 2022) (noting *Pobliner v. Fogg*, 438 F. Supp. 890, 892 (S.D.N.Y. 1977), and *Zagarino v. West*, 422 F. Supp. 812, 819 (E.D.N.Y. 1976), both

have found that "*Stone v. Powell* bars Title III claims to the same extent as Fourth Amendment claims")).  Following the approach taken by the district courts in *Gjelaj* and *Rivera*, the Court assumes, solely for purposes of this Decision and Order, that an alleged violation of 18 U.S.C. § 2518(8)(a) provides an independent basis for relief.

Based on the copies of the sealing order signed by Monroe County Court Judge James Piampiano (Dkt. 19-2 at 1-2) and the supporting affidavit of Special Agent Christopher Muhaffy of the U.S. Drug Enforcement Administration (*id.* at 3-4), Petitioner has failed to show noncompliance with 18 U.S.C. § 2518(8)(a) or, for that matter, C.P.L. § 700.50(2).  According to the affidavit, "[i]nterceptions were terminated on June 24th, 2015, at approximately 11:45 A.M." (Dkt. 19-2 at 4).  The sealing order states that the eavesdropping recordings were presented to the court and sealed on June 25, 2015 at 11:40 a.m. (*Id.* at 2).  Thus, the intercepted communications were sealed within 24 hours of the expiration of the authorization order.  *See Massino*, 784 F.2d at 156.  Accordingly, even assuming that a violation of 18 U.S.C. § 2518(8)(a) can provide a basis for federal habeas relief, Petitioner has not established such a violation.

## B.    Involuntary Guilty Plea (Points One and Seven)

Petitioner reasserts the challenges to his guilty plea that he raised in his *pro se* supplemental appellate brief and his C.P.L. § 440.10 motion:  (1) the trial court did not adequately advise him of the rights he would be relinquishing by pleading guilty, (2) his factual allocution negated his guilt, (3) the trial court coerced his plea and favored the prosecution, and (4) the Appellate Division's holding invalidating his appeal waiver requires a finding that the plea was involuntary.  For the reasons below, the Court finds

that Petitioner's claims of error are belied by the record. Petitioner's guilty plea was in all respects knowing, voluntary, and intelligent.

### 1. Inadequate Advice Regarding Rights Waived by Guilty Plea

Since "[a] guilty plea operates as a waiver of important rights, . . . [it] is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). When a plea of guilty is entered in a state criminal trial, the following important rights are waived by the defendant:

> First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers.

*Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (citations omitted). A waiver of these rights cannot be presumed from "a silent record." *Id.*; *see also id.* at 239, 244 (reversing conviction as violative of due process where the "record [did] not disclose that [petitioner] voluntarily and understandingly entered his pleas of guilty" since "the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court" (quotation to record omitted)).

While the record must "affirmatively disclose[] that the defendant's guilty plea is intelligent and voluntary," *Hanson v. Phillips*, 442 F.3d 789, 798 (2d Cir. 2006), the state trial judge "is not required by federal law to engage in any particular interrogatory 'catechism' akin to that required of federal courts by Federal Rule of Criminal Procedure 11," *id.* (quoting *Siegel v. New York*, 691 F.2d 620, 626 (2d Cir. 1982)). In addition, it is

well settled that a defendant's statements under oath at a plea allocution "carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir. 1992)).

According to Petitioner, the trial court failed to establish during the plea colloquy that he "actually apprehend[ed] that there was a privil[e]ge against self-incrimination, as well as the right to be in fact confronted by witnesses or confront witnesses." (SR: 185). The following portion of the colloquy contradicts Petitioner's assertions:

| | |
|---|---|
| THE COURT: | By pleading guilty you are giving up your rights to have Mr. Riotto represent you at the trial, *to question witnesses that would be called against you, challenge what they have to say, you are giving up his right to call witnesses on your behalf* and giving up your right to testify at trial on your own behalf, *or if you chose not to, to have the jury told that they can't hold that against you in any way*. Do you understand all those rights you are giving up by pleading guilty? |
| THE DEFENDANT: | Yes, I do. |

(6/10/16 T: 5-6 (emphases supplied)).

Although the trial court did not specifically refer to the Sixth Amendment's Confrontation Clause or the Fifth Amendment's privilege against self-incrimination made applicable to the states through the Fourteenth Amendment, the trial court explained the

substance of those rights and obtained confirmation that Petitioner understood he was waiving them.

### 2. Factual Allocution Inconsistent with Guilt

Petitioner claims he never admitted to knowing that his co-defendant, Marcano, was bringing narcotics to 1199 North Street, which negated an element of the charge to which he was pleading guilty. Petitioner's contention is refuted by the plea colloquy:

| | |
|---|---|
| [PROSECUTOR]: | And on that day around five or six in the afternoon, were you aware that Yamar Marcano (phonetic) was going to bring two kilograms of cocaine to 1199 North Street? |
| THE DEFENDANT: | I was aware of Marcano, but -- |
| [PROSECUTOR]: | You knew Mr. Marcano? |
| THE DEFENDANT: | He my family. |
| [PROSECUTOR]: | He's family? |
| THE DEFENDANT: | Yeah, he's like my cousin husband. |
| [PROSECUTOR]: | Okay. And on -- in the evening on June 20th *he was bringing two kilograms to your home on North Street*; is that correct? |
| THE DEFENDANT: | *He was bringing, yes*, but – |
| [PROSECUTOR]: | *And you knew he was doing that*? |
| THE DEFENDANT: | I got -- *yeah*. |
| [PROSECUTOR]: | Okay. And the cocaine that he was bringing that was over eight ounces of cocaine. *Do you have any challenges to the weight of the cocaine* that was - - |
| THE DEFENDANT: | *No. No, I have no challenges.* |
| [PROSECUTOR]: | And when Mr. Marcano brought the cocaine to your home at 1199 North Street, were you also going to have access to those - -to that cocaine? |
| THE DEFENDANT: | He, he brought it. He was - - he didn't brought it to the house, he was outside. |
| [PROSECUTOR]: | He was ultimately stopped by the police outside? |
| THE DEFENDANT: | In the corner leaving. |
| [PROSECUTOR]: | But the plan was for him to bring that cocaine to your home at 1199 North Street; is that correct? |
| THE DEFENDANT: | Part of it. |

| | |
|---|---|
| [PROSECUTOR]: | *Part of it.  And you knew he was bringing the cocaine there*? |
| THE DEFENDANT: | *Yes*. |

(6/10/16 T: 11-13 (emphases supplied)).  The trial court then questioned Petitioner briefly to confirm Petitioner's knowledge about Marcano's delivery of the cocaine:

| | |
|---|---|
| THE COURT: | And you knew it was illegal to possess cocaine? |
| THE DEFENDANT: | I knew it was illegal, yeah. |
| THE COURT: | *You knew by him bringing it to your house you were going to have access and authority to do things with it*? |
| THE DEFENDANT: | *Yeah*. |

(*Id.* at 13 (emphases supplied)).  After Petitioner entered his plea, the trial court asked if he had "answered all of [the trial court's] questions truthfully," and Petitioner replied, "Yes." (*Id.* at 14).

### 3.  Coercion by Trial Court

Petitioner asserts that the trial court was "aligned with" the prosecution and "interject[ed] itself" into the plea negotiations.  (SR: 195-96).  In particular, Petitioner contends that the trial court coerced him into pleading guilty by incorrectly informing him that his sentencing exposure after trial was "20 or 25 years."  (SR: 195).  On May 31, 2016, after the prosecutor placed on the record that she had extended a plea offer with a maximum sentence of 12 years' imprisonment, the following exchange occurred regarding Petitioner's post-trial sentencing exposure:

| | |
|---|---|
| THE COURT: | And you understand, Mr. Figueroa, if you are convicted after trial, I can sentence you up to something legally permissible, which I believe is twenty years plus five or twenty-five years plus five.  It is significantly more than twelve.  You understand that, sir? |

| THE DEFENDANT: | Yes, sir. |
|---|---|
| [PROSECUTOR]: | Judge, I actually believe it is twenty-four years. |
| THE COURT: | I knew it wasn't twenty-five. All right. |

(5/31/16 T: 4-5).[7]

"While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)). Thus, "a court's 'accurate statements concerning higher sentences that might result from trial' do 'not . . . render[ ] a subsequent . . . guilty plea involuntary.'" *Gabbidon v. Lee*, No. 18CIV2248VBJCM, 2022 WL 1557272, at *10 (S.D.N.Y. Mar. 10, 2022) (alteration and ellipses in original (quoting *Ocasio v. Smith*, No. 07 Civ. 2754(BSJ)(AJP), 2008 WL 110938, at *15 (S.D.N.Y. Jan. 8, 2008))), *adopted*, No. 18 CV 2248 (VB), 2022 WL 1558156 (S.D.N.Y. May 16, 2022); *see also*, *e.g.*, *Gil v. Mazzuca*, No. 03 Civ.3316 WHP GWG, 2004 WL 389103, at *8 (S.D.N.Y. Mar. 3, 2004) (rejecting habeas claim that the petitioner "was coerced into pleading guilty by the trial court's statements that he would be sentenced to 'upwards of twenty years' if he was found guilty by a jury").

---

[7]    Because the top count of the indictment was an A-1 felony, *see* N.Y. Penal Law § 110.05(1), and because one of the plea conditions was sentencing as a second felony drug offender, Petitioner faced a sentencing range of between 12 and 24 years' imprisonment if convicted at trial, *see id.* § 70.71(3)(b)(i).

Petitioner has not substantiated his claim that the trial court was "motivated by anything but a desire to fully inform [him] of the consequences of going to trial." *Oyague v. Artuz*, 274 F. Supp. 2d 251, 258 (E.D.N.Y. 2003) (rejecting claim of coercion that was based on the petitioner's recounting of an "off-the-record conversation with the trial court during which [he] was told that if he went to trial and were convicted he would spend the rest of his life in prison because he would be facing a likely 65 years to life sentence"). Moreover, Petitioner stated under oath that nobody had promised him anything in exchange for his guilty plea; nor had anyone threatened him or forced him to relinquish his trial rights. (6/10/16 T: 5). Petitioner has never supplied any basis for overcoming the "strong presumption of verity," *Blackledge*, 431 U.S. at 74, accorded to his sworn statements before the trial court.

### 4. Effect of Appellate Rights Waiver on Voluntariness of Plea

Petitioner claims that the Appellate Division's holding invalidating his waiver of appellate rights demonstrates that his guilty plea likewise was unlawful. (*See*, *e.g.*, SR: 383 (arguing in his C.P.L. § 440.10 motion that "the waiver of [the] right to appeal is so attached to the contract of the guilty plea" that the waiver being "rendered invalid" "call[s] into question the entirety of . . . the guilty plea")). As noted above, although the trial court primarily rejected this claim on procedural grounds, it ruled in the alternative that it was meritless. Petitioner has not demonstrated that the ruling was erroneous as a matter of New York State law or federal constitutional law.

"Where a waiver of appeal is challenged on appeal and deemed unenforceable, the remedy is to find that the defendant has not waived his or her appellate rights." *People v.*

*Thomas*, 190 A.D.3d 1157, 1157 (3d Dep't 2021) (citing C.P.L. § 450.10)). In such case, the appellate court will decline to enforce the waiver and will address the issues that are reviewable absent a valid appellate rights waiver. *Id.* (collecting cases). "Thus, an unenforceable appeal waiver does not automatically void a knowing, voluntary and intelligent guilty plea." *Id.*; *accord*, *e.g.*, *People v. Galicia*, 231 A.D.3d 851, 852 (2d Dep't 2024) ("[E]ven if the defendant did not validly waive his right to appeal, 'it would not render his guilty plea involuntary so as to require that we invalidate the plea or entitle him to withdraw his guilty plea.'" (quoting *Thomas*, 190 A.D.3d at 1157)).

This is consistent with the principle that "the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty. . . ." *Harris v. Bezio*, No. 11-CV-0360 MAT, 2012 WL 4026488, at *2 (W.D.N.Y. Sept. 12, 2012) (ellipsis in original (quoting *People v. Lopez*, 6 N.Y.3d 248, 256 (2006))). Indeed, the New York State courts have upheld convictions based on guilty pleas even where the defendant's waiver of appellate rights was invalid. *See*, *e.g.*, *People v. Amparo*, 234 A.D.3d 605, 605 (1st Dep't 2025) ("Although defendant's waiver of the right to appeal was invalid, defendant's sentence [following conviction based on a guilty plea] was not excessive.").

Moreover, the invalidity of an appellate rights waiver, standing alone, is not a basis for federal habeas corpus review. *See*, *e.g.*, *Nicholas v. Smith*, No. 02 CV 6411 (ARR), 2007 WL 1213417, at *11 (E.D.N.Y. Apr. 24, 2007) ("[W]hile petitioner's argument that the appeal waiver was invalid may have some basis in New York law, petitioner has not demonstrated that the enforcement of the waiver denied him of any rights under the federal Constitution[.]"), *aff'd*, 329 F. App'x 313 (2d Cir. 2009); *Salaam v. Giambruno*, 559 F.

Supp. 2d 292, 298 (W.D.N.Y. 2008) (petitioner's claim that his appellate rights waiver was invalid because the trial court "did not ask petitioner to explain in his own words his understanding of what this waiver meant" did not state a basis for habeas relief).

Notwithstanding the infirmities in the appellate rights waiver, the record demonstrates that the guilty plea was a voluntary, intelligent, and knowing relinquishment of Petitioner's trial rights. None of Petitioner's arguments in Points One and Seven provide a basis for habeas relief.

## VII.  CONCLUSION

For the reasons discussed above, the request for a writ of habeas corpus is denied, and the petition (Dkt. 1) is dismissed. The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(1), (2). The Clerk of Court is direct to enter judgment in Respondent's favor and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 13, 2025
            Rochester, New York